UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DISTRICT

| | |
|---|---|
| STEVE HANEY,<br><br>     Plaintiff,<br><br>vs.<br><br>AMERICAN FAMILY MUTUAL INSURANCE COMPANY,<br><br>     Defendant. | Civil Case No. 16-4113<br><br>DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S CLAIM FOR BAD FAITH (COUNT II) AND REQUEST FOR PUNITIVE DAMAGES (COUNT III) |

COMES NOW the Defendant, American Family Mutual Insurance Company ("AFMIC"), through undersigned counsel, and respectfully submits the following Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Claim for Bad Faith (Count II) and Request for Punitive Damages (Count III), pursuant in part to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

The above captioned-action involves a simple contract dispute concerning whether Plaintiff is entitled to benefits under a homeowner's insurance policy he purchased from AFMIC. Indeed, as explained below, the only specific allegations Plaintiff makes in his Complaint are that: (1) that his roof was damaged in a hailstorm; (2) AFMIC inspected the roof, found some damage, and offered Plaintiff a settlement payment; (3) _nearly two years later_ Plaintiff informed AFMIC of his belief that the settlement payment was not enough to repair his roof; and (4) AFMIC re-inspected Plaintiff's roof and disagreed with Plaintiff's assessment of the damage.

1

Although Plaintiff's breach of contract claim appears tenuous based on these allegations alone, Plaintiff's Complaint does not stop there.  Instead, Plaintiff's Complaint relies on these narrow allegations to recklessly assert highly speculative theories that AFMIC intentionally and maliciously denied Plaintiff's insurance claim in bad faith and that AFMIC has in fact intentionally designed its corporate claims handling processes to deprive insureds of benefits to which they are entitled.

Notably, however, Plaintiff's Complaint does not cite any *specific factual allegations* to support these theories of AFMIC's purported bad faith.  Plaintiff instead relies solely on conclusory statements and reckless inferential leaps to arrive at the conclusion that AFMIC maliciously and intentionally deprived Plaintiff of insurance benefits and did so pursuant to a company-wide conspiracy aimed at bilking its insureds.  While this theory is eye-catching, Plaintiff's Complaint is devoid of factual allegations which satisfy the plausibility requirements of the federal pleading rules.  Accordingly, Plaintiff's claim for bad faith (Count II) and his related request for punitive damages (Count III) should be dismissed.

**PLAINTIFF'S FACTUAL ALLEGATIONS**

The factual allegations Plaintiff asserted in support of his claims are uncomplicated and very narrow.  Specifically, Plaintiff's Complaint alleges that in June 2014, the roof of Plaintiff's home was damaged by a hailstorm. *Complaint* ("*Compl.*") ¶¶ 6-7.  The Complaint further asserts that, at the time this damage occurred, Plaintiff owned a homeowner's policy from AFMIC which covered hail damage. *Compl.* ¶¶ 5, 8.  Plaintiff asserts that he timely submitted a claim to AFMIC for the hail damage, and that on July 2, 2014, an AFMIC agent inspected the roof, concluded there was minimal damage, and prepared a report which listed $3,890.15 as a reasonable amount of money to fix the roof damage caused by the hailstorm. *Compl.* ¶¶ 9-13.

Notably, however, Plaintiff's Complaint contains no actual details regarding the investigation AFMIC performed and instead merely makes a conclusory statement that the investigation was "unreasonable."  *Compl.* ¶ 17.

According to the Complaint, Plaintiff took no action *for two years* following his receipt of AFMIC's report of its investigation and, interestingly, the Complaint provides no explanation for Plaintiff's apparent acceptance of AFMIC's initial damage determination.  *Compl.* ¶¶ 21-22.  Instead, the Complaint skips forward in time to July 2016, when, according to the Complaint, AFMIC received reports indicating that there was "significant hail damage" to Plaintiff's roof which would cost approximately $68,259 to repair.  *Compl.* ¶¶ 21-22.  The Complaint alleges that, shortly thereafter, AFMIC completed a second inspection of Plaintiffs roof.  *Compl.* ¶ 23.  Following this second inspection, AFMIC allegedly prepared a second report indicating some "functional hail damage was evident on all slopes of [Plaintiff's] roof."  *Compl.* ¶ 24.  According to Plaintiff's Complaint, AFMIC's second report did not mention or otherwise address the July 2016 reports that AFMIC supposedly received.  *Compl.* ¶ 26.  The Complaint instead alleges that, on August 8, 2016, AFMIC sent Plaintiff a letter indicating that Plaintiff was not entitled to *additional benefits* under his policy.[1]  *Compl.* ¶¶ 27-28.

The remainder of Plaintiff's Complaint contains no specific factual allegations and is instead devoted to stating boilerplate legal conclusions and formulaic recitations of the elements of Plaintiff's claim for bad faith and request for punitive damages.  For example, Plaintiff characterized AFMIC's handling of his claim in the following ways:

- AFMIC's purported July 2, 2014 investigation was not a reasonable investigation of Plaintiff's claim, and AFMIC supposedly knew or recklessly disregarded this fact. *Compl.* ¶¶ 17-18.

---

[1]   Tellingly, Plaintiff's Complaint also omits any explanation of what benefits he received from AFMIC.

3

- If AFMIC had performed a "reasonable investigation and/or evaluation" of Plaintiff's claim, it allegedly would have known that $3,980.15 was not a sufficient amount to repair the hail damage. *Compl.* ¶ 20.

- AFMIC allegedly knew that or recklessly disregarded that its initial investigation was biased in AFMIC's favor. *Compl.* ¶ 32.

- AFMIC has engaged in a pattern and practice of denying and delaying the payment of the benefits Plaintiff was allegedly owed under his homeowner's policy. *Compl.* ¶ 36.

- AFMIC allegedly failed to share all of the information it obtained from its investigation of Plaintiff's claim. *Compl.* ¶ 44.

In addition to Plaintiff's conclusory statements concerning the manner in which AFMIC purportedly investigated, evaluated and handled his specific insurance claim, Plaintiff's Compliant also makes bald and conclusory allegations about AFMIC's corporate claims handling practices/strategies, including that:

- AFMIC allegedly has a pattern and practice of conducting sham investigations of its insureds' weather-related property damage claims and identifying intentionally low amounts of benefits owed under the insureds' policies. *Compl.* ¶¶ 29-30.

- AFMIC's claims handling process is allegedly designed to deny or delay paying its insureds the full amount of benefits owed under their policies. *Compl.* ¶¶ 47-48.

- AFMIC allegedly intentionally or recklessly utilizes a claims handling process designed to deny or delay payment of benefits in order to maximize AFMIC's own profits. *Compl.* ¶¶ 53-55.

- AFMIC allegedly "acted with oppression fraud, or malice," thus supposedly entitling Plaintiff to punitive damages. *Compl.* ¶ 57.

While Plaintiff's list of allegations regarding AFMIC's purported bad faith is long, they fall short because they are conclusions—not facts. Plaintiff's conclusory assertions that he was a victim of malicious, bad faith corporate claims handling practices are based on conjecture and speculation derived solely from Plaintiff's disagreement with AFMIC's assessment of the purported hail damage to his roof. As explained below, Plaintiff's insinuations and inferential leaps have no factual basis and plainly do not satisfy the Federal pleading requirements.

4

Accordingly, AFMIC respectfully urges the Court to dismiss Plaintiff's bad faith claim and his related request for punitive damages.

## ANALYSIS

"A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint." *Waldner v. N.A. Truck & Trailer, Inc.*, 277 F.R.D. 401, 405 (D.S.D. 2011). "To survive a motion to dismiss, the complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "To meet this plausibility standard, the complaint must contain more than labels and conclusions." *Id.* Moreover, although the reviewing court must accept all well-pleaded factual allegations as true, the Complaint must actually contain "'*factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S.662, 677 (2009)).

**A.   Under South Dakota Law, Bad Faith Claims Are a Species of Fraud and Thus are Subject to the Heightened Pleading Requirements of Federal Rule of Civil Procedure 9(b)**

Although the federal pleading rules generally require that a complaint present a "short and plain statement of the claim[s] showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), the unique substantive nature of bad faith claims brought under South Dakota law require that these claims be subject to the heightened pleading standards of Rule 9(b).[2]

Under South Dakota law, "for proof of bad faith, there must be an absence of a reasonable basis for denial of policy benefits or failure to comply with a duty under the insurance contract and the knowledge or reckless disregard of the lack of a reasonable basis for the denial."

---

[2]   Because federal jurisdiction in this case is based on diversity, this Court should apply South Dakota substantive law.  *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938).

*Dak., Minn. E,R,R, Corp. v. Acuity*, 711 N.W.2d 623, 629 (S.D. 2009) (internal citations and quotations omitted).

The South Dakota Supreme Court has long recognized that, under South Dakota law, "bad faith is a species of fraud." *Jennings v. Jennings*, 309 N.W.2d 809, 811 (S.D. 1981); *see Kunkel v. United Sec. Ins. Co. of N.J.*, 168 N.W.2d 723, 732 (S.D. 1969) (stating that "bad faith is a species of fraud"); *see also* Roger M. Baron, *When Insurance Companies Do Bad Things: The Evolution of the "Bad Faith" Causes of Action in South Dakota*, 44 S.D. L. Rev. 471, 475 (1988-89) (noting that "bad faith is considered to be a species of fraud").

This designation of the substantive nature of a bad faith claim has significant implications with respect to the manner in which a bad faith claim must be pled under the Federal Rules of Civil Procedure. Specifically, because the South Dakota Supreme Court has deemed bad faith to be a species of fraud, bad faith claims must satisfy the heightened pleading requirements that Rule 9(b) imposes on fraud claims.[3]

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud…a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Moreover, although this Court has noted that a plaintiff "need not plead fraud with complete insight," it has further recognized that "Rule 9(b) does require more specificity when pleading fraud than for pleading other causes of action." *Broin and Assocs., Inc. v. Genecor Intern., Inc.*, 232 F.R.D.

---

[3] AFMIC has been unable to identify any instances where this Court was called upon to determine whether bad faith insurance claims arising under South Dakota law are subject to the particularity requirements of Rule 9(b). However, federal courts sitting in other jurisdictions where bad faith is considered to be a species of fraud have consistently required that allegations of bad faith meet the pleading requirements of Rule 9(b). *See, e.g., Jason's Port City Health Club, Inc. v. Hartford Fire Ins. Inc.*, No. Civ.A.05-0206-WS-C, 2005 WL 1527692, at *2 (S.D.Ala. June 27, 2005) ("claims of bad faith under Alabama law are subject to Rule 9(b)); *MLSMK Inv. Co. v. JP Morgan Chase & Co.,* 737 F. Supp. 2d 137, 145 (S.D.N.Y. 2010) (holding that because claims for commercial bad faith under New York law require a showing of fraud, such bad faith claims are subject to the pleading requirements of Rule 9(b); *c.f. Noble Fiber Tech., LLC v. Argentum Medical, LLC*, No. 305-CV-01855, 2006 WL 1793219, at 5-6 (M.D.Pa. June 27, 2006) (holding that allegations of bad faith giving rise to a violation of the Lanham Act must satisfy the particularity requirements of Rule 9(b)).

6

US.108276437.01

335, 340 (D.S.D. 2005) (dismissing the plaintiff's fraud claim because the plaintiff's complaint failed to identify the time, place or identity of the person committing the fraud). More specifically, the Eighth Circuit has instructed that "Rule 9(b) requires plaintiffs to plead the who, what, when, where, and how: the first paragraph of any newspaper story." *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880 (8th Cir. 2011) (internal quotation omitted).

Given the substantive nature of bad faith claims arising under South Dakota law, this Court should analyze the sufficiency of Plaintiff's bad claim under the heightened pleading standards of Rule 9(b). However, regardless of whether Plaintiff's bad faith claim is subject to the particularity requirement of Rule 9(b) or merely the notice pleading standards set forth in *Iqbal* and *Twombly*, Plaintiff's Complaint falls far short of stating a plausible, adequate claim for bad faith.

**B.    Plaintiff's Bad Faith Claim Fails to Satisfy the Federal Pleading Requirements**

As noted above, Plaintiff's Complaint liberally insists that AFMIC engaged in bad faith conduct without bothering to allege specific facts to support this legal conclusion. Notably, Plaintiff appears to be claiming that AFMIC engaged in two different types of bad faith conduct: (1) bad faith handling of Plaintiff's specific insurance claim; and (2) intentionally designing and utilizing a "claims handling process" which, through some unspecified means, is aimed at depriving policyholders of benefits to which they are due. Plaintiff's allegations with respect to both types of bad faith fall conduct far short of satisfying the requirements of the federal pleading rules.

*1.    Allegations Related to AFMIC's Handling of Plaintiff's Insurance Claim*

With respect to AFMIC's handling of Plaintiff's specific insurance claim, Plaintiff's own Complaint merely alleges that: (1) Plaintiff's roof was damaged in a hailstorm; (2) shortly

7

thereafter, an AFMIC representatives inspected the roof and found that it showed signs of some hail damage; (3) Plaintiff apparently accepted AFMIC's assessment of the damage; (4) two years later, Plaintiff, or someone acting on Plaintiff's behalf, submitted one or more (vaguely-described) reports suggesting that it would cost approximately $68,000 to repair the roof; and (5) AFMIC re-inspected the roof, again identified there was some hail damage, but not to the extent that Plaintiff claimed. *Compl.* ¶¶ 7-28.

These factual allegations state nothing more than the fact that there was a disagreement between the parties regarding the degree to which Plaintiff's roof was damaged by the June 2014 hailstorm. Noticeably absent from the Complaint, however, are any specific details regarding what investigation AFMIC performed, why that investigation was allegedly deficient, what claims handling procedures AFMIC utilized to evaluate and handle Plaintiff's claim, or why those procedures were unreasonable or problematic. Instead, Plaintiff's bad faith claim appears to rest solely on a conclusory assumption that, because AFMIC supposedly offered Plaintiff too little money to fix his roof, the process by which AFMIC reached its damage assessment and settlement offer must have involved a bad faith/sham investigation.

The federal pleading rules require Plaintiff to allege <u>*facts*</u> in support of his bad faith claim—not legal conclusions and rote recitations of the elements of a bad faith claim. *Iqbal*, 556 U.S. at 677; *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015); *Olegovna v. Citibank, N.A.*, 4:16-CV-04114-LLP, 2016 WL 4399307, at *2 (Aug. 17, 2016). Simply put, Plaintiff's failure to identify with any reasonable degree of specificity "what" AFMIC did to investigate and adjust his insurance claim and, more importantly, "why" such conduct constituted bad faith establishes that Plaintiff's bad faith claims fails to satisfy the requirements of the federal pleading rules and

8

should therefore be dismissed. Fed. R. Civ. P. 8(a)(2) and 9(b); *Iqbal*, 556 U.S. at 677; *Summerhill v. Terminix, Inc.*, 637 F.3d 880.

  2. *Allegations Related to AFMIC's Corporate Claims Handling Practices*

  This reasoning applies with even greater force to Plaintiff's alternative bad faith theory—that AFMIC's claims handling process is allegedly designed to deny or delay payment of benefits to insureds. Tellingly Plaintiff has asserted no specific factual allegations or details regarding *what* claims handling processes AFMIC utilizes, *why* these processes constitute bad faith by AFMIC or *how* AFMIC has exhibited a pattern or practice of utilizing its claims handling processes to deny or delay payments to insureds. *Summerhill*, 637 F.3d at 880. Instead, Plaintiff's Complaint appears to make the extraordinary leap that, because AFMIC's settlement offer to Plaintiff was allegedly too low, AFMIC's investigation of the hail damage to Plaintiff's roof surely must have been a sham and further that AFMIC must in fact have a corporate practice of conducting sham investigations of its insureds' claims.

  These attenuated assumptions do not constitute "facts" under the federal pleading rules. Although a reviewing court should not dismiss a claim under Rule 12(b)(6) merely because it finds the alleged *facts* to be "doubtful," the federal pleading rules nonetheless require, at a minimum, that the pleader actually allege "*factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677. "[L]abels and conclusions" are not enough. *Waldner*, 277 F.R.D. at 405. Here, Plaintiff's theory of widespread corporate bad faith by AFMIC rests on nothing more than vague allegations that AFMIC acted in bad faith towards Plaintiff and a reckless assumption (unsupported by any additional factual allegations) that AFMIC must therefore have a corporate practice of bilking its customers. Regardless of the labels and conclusions Plaintiff wishes to

9

aim at AFMIC, Plaintiff's *factual allegations* fall far short of justifying a "reasonable inference" that AFMIC intentionally or recklessly designed its claims handling processes to deny or delay payment of benefits to its customers, particularly under the heightened pleading standards of Rule 9(b).  *See* Fed. R. Civ. P. 8(a)(2) and 9(b); *Iqbal*, 556 U.S. at 677; *Summerhill, Inc.*, 637 F.3d at 880.  For this additional reason, AFMIC urges the Court to dismiss Plaintiff's bad faith claim.

> 3. *Case law from other jurisdictions provides guidance regarding the inadequacy of Plaintiff's claim for bad faith.*

Although this Court has occasionally rejected 12(b)(6) challenges to bad faith claims, those cases are easily distinguishable from the present action in that the plaintiffs generally alleged specific factual details regarding the bad conduct in which the defendant supposedly engaged.  *See, e.g., Berry v. Time Ins. Co.*, 798 F. Supp. 2d 1015, 1021 (D.S.D. 2011) (holding that the plaintiff had adequately pled a bad faith claim based on allegations that the insurer misrepresented specific information to the insured and refused to negotiate an alternative care plan once the insured's doctor pushed for a specific health care plan that the insured needed).

Federal courts sitting in other jurisdictions, however, have not hesitated to dismiss bad faith claims in circumstances where, as here, the plaintiff's bad faith action was premised on conclusory statements and minimal factual allegations.  The case of *Plummer v. State Farm Fire and Casualty Co.*, No. 2:13-cv-01579, 2014 WL 2960473 (W.D.Pa. June 27, 2014) provides a prime example, particularly given the factual similarities between that case and this one.

The plaintiffs in *Plummer* were homeowners whose roof was damaged by hail and wind in a severe weather event.  *Id.* at *1.  The plaintiffs subsequently filed a claim for benefits under their homeowner's insurance policy with State Farm.  According to the plaintiff's complaint, State Farm inspected their roof, found that some damage had occurred, and made a payment for

10

the damage. *Id. The* plaintiffs further alleged, however, that the damage to their roof was more extensive than State Farm assessed and that State Farm had in fact made a larger benefits payment to at least one other insured in the plaintiffs' neighborhood for similar damage caused by the same storm. *Id.* at *1-2. In addition, the plaintiffs' complaint alleged that State Farm had failed to provide sufficient payment for their roof damage "despite being provided proof of damage and despite the damage being caused by an event covered by the [plaintiffs'] policy. *Id.* at *1.

The plaintiff's complaint asserted claims against State Farm for breach of contract and bad faith. In support of the bad faith claim, the plaintiffs alleged the facts discussed above. In addition, the plaintiffs alleged that State Farm "acted in bad faith through a long list of acts and omissions" that are remarkably similar to the allegations that Plaintiff has leveled against AFMIC in this case. For example, the *Plummer* plaintiffs asserted that State Farm committed bad faith by:

- Frivolously and unreasonably denying benefits when there was no reasonable basis for denial.

- Failing to conduct a proper, objective and reasonable investigation of the home and the cause of the damage to it.

- Engaging in bad faith investigative and claims handling practices with respect to the plaintiffs' claim.

- Refusing to timely pay plaintiffs insurance benefits to which they were indisputably entitled (i.e. conducting sham investigations).

- Unreasonably engaging in an adversarial relationship with the plaintiffs and elevating its interests above that of its insureds.

- Unreasonably and unilaterally determining through its own agents and employees that the plaintiffs were not entitled to complete coverage and compensation for loss.

- Unreasonably causing the plaintiffs to pursue litigation in order to attempt to obtain the benefits to which the plaintiffs were entitled.

11

- Intentionally, maliciously, fraudulently and recklessly engaging in a course of conduct to deprive the insureds of benefits when State Farm knew or should have known the benefits were due and owing.

*Id.* at *5-6.

The *Plummer* court dismissed the plaintiffs' bad faith claim, holding that the "plaintiffs' laundry list of conclusory statements" were mere "labels and conclusions [that were] not a strong enough shield to withstand defendant's Rule 12(b)(6) motion." *Id.* at *6 (citing *Iqbal*, 556 U.S. at 678). The court noted that "generalized accusations without supporting facts setting forth who, what, where, when and how the bad faith occurred" were insufficient and concluded that the plaintiffs had improperly grounded their bad faith claim on "insinuation"—as opposed to well-pleaded facts. *Id.* at *5-6. The court thus held that, while the plaintiffs had adequately stated a claim for breach of contract, their conclusory allegations of bad faith were insufficient to meet the federal pleading requirements. *Id.*

Numerous federal courts have rejected similar attempts by plaintiffs to plead bad faith claims on the basis of insinuation and conclusory allegations. *See, e.g., Fuscellaro v. Combined Ins. Group, Ltd.* CA No. 11-723, 2011 WL 4549152, at *5 (D.N.J. Sept. 29, 2011) (holding that the plaintiff's assertions that the insurer lacked a fairly debatable reason to pay the plaintiff's claim and knew or recklessly disregarded the lack of reasonable basis for denying the claim were "no more than legal conclusions made in the guise of factual allegations."); *Langermann v. Property & Cas. Ins. Co. of Hartford*, No. 2:14-cv-00982-RCJ-PAL, 2014 WL 3696664, at *2 (D.Nev. July 23, 2014); *H.E.McGonigal v. Harleysville Lake States Ins. Co.*, No. 1:15-cv-00549-TWP-DML, 2015 WL 6459129, at *2-3 (S.D.Ind. Oct. 26, 2015) (holding that the plaintiff's complaint failed to adequately state a claim for bad faith because "there are no factual allegations to explain how or when Harleysville (1) delayed or failed to properly investigate the insurance

12

claim, (2) made an unfounded refusal to pay policy proceeds, (3) failed to timely process and pay the insurance claim, (4) improperly delayed making payment to McGonigal on its insurance claim, (5) deceived McGonigal as to the actual insurance coverage and claims process, (6) failed to settle a claim in good faith that could not be disputed, or (7) denied coverage without a rational, principled basis for doing so."); *Mills v. Allstate Ins. Co.*, CA N. 15-4824, 2015 WL 5707303, at *2-3 (E.D.Pa. Sept. 29, 2015) (holding that, although the plaintiff's complaint provided a rote recitation of the elements of bad faith, these "bare-bones allegations" were nothing more than "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," and thus did not adequately state a cause of action).

That is precisely what Plaintiff has done here. While the facts alleged in Plaintiff's Complaint arguably state a plausible claim for breach of contract, these facts fall far short of supporting a reasonable inference that AFMIC acted in bad faith toward Plaintiff, much less that AMFIC intentionally designed its claims handling process to deprive its insureds of benefits.

Plaintiff's bad faith claim is instead built on conclusory statements, threadbare recitals of the elements of a bad faith action, and heavy doses of insinuation. Plaintiff's assertion of such labels and conclusions does not excuse Plaintiff of his responsibility to allege <u>*actual facts*</u> sufficient to support a "reasonable inference that [AFMIC] is liable for the misconduct alleged." *Waldner*, 277 F.R.D. at 405 (quoting *Iqbal*, 556 U.S. at 677). Plaintiff's Complaint fails to allege sufficient facts to support a claim for bad faith. Accordingly, AFMIC respectfully urges the Court to dismiss Plaintiff's deficient bad faith claim. Fed. R. Civ. P. 12(b)(6).

C.     **Plaintiff's Punitive Damages Request Should Also Be Dismissed**

AFMIC also respectfully asks that the Court dismiss Plaintiff's request for punitive damages. As an initial matter, although Plaintiff requested punitive damages in a separate

"Count," it is undisputed that under South Dakota law punitive damages are a type of damage and thus "are allowable only when supported by a cause of action." *Olson-Roti v. Kilcoin*, 653 N.W.2dd 254, 259 (S.D. 2002). Moreover, punitive damages are not available for a breach of an obligation arising from a contract. SDCL 21-3-2. Accordingly, because Plaintiff's Complaint only alleges causes of action for breach of contract and bad faith, Plaintiff's punitive damages request can remain in the case only if Plaintiff's bad faith claim does as well. *Id.*

As explained above, Plaintiff's bad faith claim rests on conclusory statements and insinuations—as opposed to allegations of fact—and should thus be dismissed under the federal pleading rules. Accordingly, in the event the Court in fact does dismiss Plaintiff's bad faith claim, the punitive damages request must follow closely behind. *Id.*

However, even if the Court concludes that Plaintiff's barebones allegations of bad faith are sufficient to survive AFMIC's Motion to Dismiss, the punitive damages request should nonetheless be dismissed from the case because Plaintiff's Complaint also fails to adequately plead this request.

District Courts in the Eighth Circuit (including this Court) regularly require that, similar to a fraud claim, a plaintiff seeking punitive damages must "*plead specific facts* from which the court may infer the requisite state of mind." *POET Investments Inc. v. Midwest AG Enter., Inc.*, No. CIV 08-4091, 2009 WL 790196, at *3 (D.S.D. March 24, 2009) (emphasis supplied); s*ee Cameron v. Whirl Windhorse*, 494 F.2d 110, 114 (8th Cir. 1974) (dismissing punitive damages claim because the complaint did not allege particular facts supporting an inference that the defendant's conduct was wanton and willful); *Asbury Square, L.L.C. v. Amoco Oil Co.*, 221 F.R.D. 497, 501 (S.D. Iowa 2004); *Brown v. N. Central F.S., Inc.*, 987 F. Supp. 1150, 1153 (N.D.Iowa 1997); *In re TMJ Implants Prods. Liab. Litig.*, 872 F. Supp. 1019, 1038

(D.Minn.1995); *Johnson v. Kansas City Life Ins. Co.*, No. 05–3280, 2006 WL 328421, at *2 (D.Neb. Feb. 10, 2006).

The same is true with respect to courts in other federal jurisdictions. *See, e.g., Brown & Williamson Tobacco Corp. v. CSX Transp., Inc.*, 882 F. Supp. 511, 516 (E.D. N.C. 1995) ("If the plaintiffs have failed to plead with particularity the aggravated circumstances giving rise to punitive damages, the court may dismiss the punitive damages request."); *Kline v. Nationsbank of Va., N.A.*, 886 F. Supp. 1285, 1294-95 (E.D. Va. 1995); *Franks v. Cavanaugh*, 711 F. Supp. 1186, 1192-93 (S.D.N.Y. 1989); *Zaretsky v. E.F. Hutton & Co., Inc.*, 509 F. Supp. 68, 77 (S.D.N.Y. 1981); *Sutton v. Culver*, 204 F. Supp. 2d 20, 38-39 (D. Me. 2002). Indeed, given that South Dakota law only permits the imposition of punitive damages for torts involving aggravated circumstances, such as "oppression, fraud, or malice," SDCL 21-3-2, it is clear that the federal pleading rules require that a claim for punitive damages must be supported by sufficient facts "to enable an inference that the [punitive damages request] has sufficient merit" to remain in the case and "warrant putting the defendant to the burden of responding to" discovery regarding the same. *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 625 (7th Cir. 2011).

Although Plaintiff's Complaint contains a boilerplate allegation that AFMIC "acted with oppression, fraud, or malice,"[4] this conclusory statement does not itself adequately state a claim for punitive damages. *POET Investments*, 2009 WL 790196, at *3; s*ee Cameron*, 494 F.2d at 114. Instead, the Complaint must "*plead specific facts* from which the court may infer the requisite state of mind." *POET Investments*, 2009 WL 790196, at *3 (emphasis supplied). As explained above, the factual allegations in Plaintiff's Complaint are few and far between and fall

---

[4] Notably, Plaintiff's unsubstantiated allegation that AFMIC's bad faith conduct potentially involved fraud may itself require that Plaintiff's punitive damages request be subject to the heightened pleading standards of Rule 9(b). *See* Fed. R. Civ. P. 9(b) ("In alleging fraud…a party must state with particularity the circumstances constituting fraud.").

US.108276437.01

well short of supporting an inference that AFMIC acted in bad faith, much less that AFMIC's conduct was oppressive, fraudulent, or malicious in nature.  *Id.*; *see* SDCL 21-3-2.  Accordingly, for this additional reason, Plaintiff's punitive damages request fails to satisfy the federal pleading requirements and should thus be dismissed from the case.  Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For the reasons stated above, AFMIC respectfully requests that the Court dismiss Plaintiff's claims for bad faith and punitive damages with prejudice, and that the Court further issue any additional relief that it deems just and proper.

DATED: September 27, 2016

> MEYERS BILLION, LLP
>
> By:     /s/ Steven J. Morgans
> Steve J. Morgans
> PO Box 1085
> Sioux Falls, SD 57101-1085
> T: (605) 336-3700
> smorgans@meyersbillion.com
> Attorney for Defendant American
> Family Mutual Insurance Company

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was filed electronically with the Clerk of Court through ECF and that ECF will send a notice of electronic filing to the following:

| Derek A. Nelsen | Eric T. Preheim |
| --- | --- |
| dnelsen@fullerandwilliamson.com | epreheim@fullerandwilliamson.com |

on this 27th day of September, 2016.

> /s/  Steve Morgans
> Steven J. Morgans

US.108276437.01