UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DISTRICT

| | |
|---|---|
| STEVE HANEY,<br><br>     Plaintiff,<br><br>vs.<br><br>AMERICAN FAMILY MUTUAL<br>INSURANCE COMPANY,<br><br>     Defendant. | 4:16-cv-04113-LLP<br><br><br>DEFENDANT'S REPLY TO  PLAINTIFF'S<br>OPPOSITION TO DEFENDANT'S MOTION<br>TO DISMISS PLAINTIFF'S CLAIM FOR<br>BAD FAITH (COUNT II) AND REQUEST<br>FOR PUNITIVE DAMAGES (COUNT III) |

COMES NOW the Defendant, American Family Mutual Insurance Company ("AFMIC"), through undersigned counsel, and respectfully submits the following Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss Plaintiff's Claim for Bad Faith (Count II) and Request for Punitive Damages (Count III) (hereinafter Plaintiff's "Opposition").

## INTRODUCTION

Plaintiff's Opposition utterly fails to address the fundamental defect with Plaintiff's Complaint, namely that the Complaint relies on improper legal conclusions and self-serving characterizations—as opposed to actual factual allegations—to support Plaintiff's claim for bad faith.  Moreover, Plaintiff's Opposition mischaracterizes South Dakota case law and marginalizes the multi-faceted purposes served by Federal Rule of Civil Procedure 9(b) in an effort to evade AFMIC's audacious contention that Plaintiff is required to allege competent and specific *facts* supporting his baseless accusation that AFMIC intentionally designed its claims handling process to bilk its insureds.

Despite Plaintiff's protests to the contrary, the actual allegations in his Complaint state nothing more than a standard contract dispute between Plaintiff and AFMIC regarding whether he is entitled to additional contract benefits beyond what AFMIC already paid to him. The Complaint falls far short of adequately and fairly alleging that AFMIC denied his claim in bad faith, much less that AFMIC maliciously relied upon dubious corporate claims handling processes to do so. AFMIC respectfully requests that the Court dismiss with prejudice Plaintiff's claim for bad faith (Count II) and request for punitive damages (Count III).

## BACKGROUND

Plaintiff's Opposition attempts to avoid dismissal of Plaintiff's bad faith claim by relying on the same types of improper insinuations and conclusory statements that plague his Complaint. As discussed in AFMIC's Motion to Dismiss and Supporting Brief, Plaintiff's Complaint attempts to allege what amounts to two separate bad faith claims against AFMIC. Plaintiff first avers that AFMIC failed to perform reasonable inspections of Plaintiff's roof because the inspectors supposedly ignored or recklessly disregarded "extensive and plainly visible damage" to Plaintiff's roof. *Complaint* (*Compl.*) ¶¶ 7, 15, 19-20, 23-25. Plaintiff then leverages this unsupported conclusion to recklessly assert that AFMIC in fact designed its entire claims handling process to deny or delay benefits owed to insureds to maximize AFMIC's profits. *Compl.* ¶¶ 53-55.

Despite Plaintiff's efforts in his Opposition to put a favorable gloss on his two (dubious) bad faith theories, Plaintiff's Complaint is chock-full of gaping factual holes that cannot be excused under the applicable pleading rules.

Plaintiff's Opposition suggests[1] that his bad faith claim and punitive damages request rest on five core factual allegations: (1) the June 2014 Hailstorm caused extensive and plainly visible damage to his roof; (2) in July of 2014, Adam Palace (who performed the inspection for AFMIC) inspected Plaintiff's roof and concluded that the June 2014 Hailstorm caused minimal damage to the roof; (3) two years later, Plaintiff's roofer submitted a report (that AFMIC received) stating that the June 2014 Hailstorm actually caused substantial damage to the roof; (4) AFMIC subsequently performed a second inspection and more or less agreed with the findings made by Plaintiff's roofer; but (5) AFMIC refused to pay for the damage.  *Opposition*, at 2-3.  Plaintiff represents that these allegations are sufficient to satisfy the applicable federal pleading rules.

Plaintiff's argument suffers from a simple, but fatal defect.  Specifically, Plaintiff's Complaint omits a host of key details that must be alleged to fairly and adequately state a claim for bad faith, regardless of whether Plaintiff's Complaint is analyzed under the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) or the standard plausibility requirements set forth in *Iqbal* and *Twombly*.  A few examples may be helpful to the Court in understanding the import of these omissions.

Plaintiff's bad faith claim largely rests on a general accusation that the June 2014 Hailstorm caused damage to his roof that AFMIC's inspectors should have detected during their investigations.  *Compl.* ¶¶ 6-7, 20.  However, although Plaintiff uses conclusory terms to describe the alleged damage to his roof (i.e., "extensive," "widespread," and "plainly visible"), the Complaint does not allege any specific details about what damage the June 2014 Hailstorm

---

[1]     Plaintiff's Opposition also supplies certain details and inferences that are not included in his Complaint. For example, the Opposition states that AFMIC knew of the damage to Plaintiff's roof because the damage purportedly was plainly visible.  *Opposition*, at 2.  The Opposition also suggests that AFMIC's August 2014 inspection provided "incontrovertible information" that American Family's report from the August 2016 investigation concluded that the June 2014 Hailstorm caused widespread damage to Plaintiff's roof, even though the Complaint by no means alleges this with any clarity.  It is the deficiencies in Plaintiff's pleadings that are the subject of AFMIC's Motion to Dismiss.  AFMIC therefore respectfully requests that the Court ignore any efforts by Plaintiff to add in factual allegations and inferences that are not found in his Complaint.

actually caused.  Indeed, the Complaint omits a host of material details, such as: (1) a description of the specific hail damage to the roof; (2) how Plaintiff knows the damage was caused by the June 2014 Hailstorm; (3) what Plaintiff means by his statement that the damage was "plainly visible" and why such damage would have been visible to Mr. Palace; or (4) whether Plaintiff inspected the damage himself or had anyone else (besides Mr. Palace) do so around the time that the June 2014 Hailstorm occurred.

As explained below, these types of details are a prerequisite to fairly and adequately stating a viable, standard claim for bad faith.  However, Plaintiff's omission of these factual details is particularly significant given the unique factual circumstances set forth in Plaintiff's Complaint.  Specifically, Plaintiff's Complaint contains a two-year gap concerning what events took place after Mr. Palace's July 2014 inspection of Plaintiff's roof.  Plaintiff fails to specify, for example, whether he took any steps to repair the hail damage to his roof.  The Complaint also fails to mention whether Plaintiff experienced any "functional" issues with his roof between July 2014 and July 2016.  These omissions are critical and undercut Plaintiff's (vaguely-pled) theory that the June 2014 Hailstorm essentially totaled his roof.  If Plaintiff personally observed the alleged "widespread" and "plainly visible" damage to his roof following the June 2014 Hailstorm, then it is curious that he waited two years to address the damage to his roof or take steps to challenge AFMIC's assessment of this damage.  Moreover, if the June 2014 Hailstorm actually totaled Plaintiff's roof, as he claims, it is also strange that the Complaint fails to describe what "functional" problems Plaintiff experienced with his supposedly non-functional roof during that two-year period.

These gaping holes in Plaintiff's Complaint are compounded by the lack of specificity in Plaintiff's allegations regarding the investigation *his own roofer* performed in July 2016 and the

conclusions the roofer drew therefrom.  Plaintiff's Complaint indicates that his roofer completed an investigation and found "significant" hail damage to Plaintiff's roof.  *Compl.* ¶ 21.  Notably absent from the Complaint, however, are any details concerning the type of investigation the roofer performed, the purpose of the investigation, or whether the roofer concluded (or even evaluated) whether the damage to Plaintiff's (20-plus year old) roof was caused by the June 2014 Hailstorm.  *Compl.* ¶¶21-22.  However, the Complaint seemingly concedes that Plaintiff's roofer merely evaluated the cost of repairing all weather-related damage to the roof (whether caused by the June 2014 Hailstorm or not), and Plaintiff (who admits that he has no experience or training that qualifies him to evaluate hail damage), has leaped to the conclusion that all of the "damage" to his aged roof was caused by the June 2014 Hailstorm.[2]  *Id.*  This is hardly a fair inference to draw.

In addition, Plaintiff's Complaint asserts that, following AFMIC's August 2016 inspection of his roof, AFMIC admitted that there was functional hail damage evident on all slopes of his roof—a concession that, according to Plaintiff, directly contradicts Mr. Palace's findings.  *Compl.* ¶¶ 24-25.  Once again, however, Plaintiff's conclusory accusations are devoid of factual support in Plaintiff's own Complaint.  The Complaint merely states that AFMIC's August 2016 investigation identified "functional hail damage…on all slopes of the roof."  *Compl.* ¶ 24.  The Complaint does not, however, allege that AFMIC ever attributed this "functional damage" to the June 2014 Hailstorm.  Nor does the Complaint provide a shred of detail regarding whether and to what extent AMFIC's August 2016 assessment of the damage

---

[2]      AFMIC further notes that, although Plaintiff's Opposition attempts to dance around the issue, it appears that Plaintiff's allegation that the June 2014 Hailstorm caused extensive and plainly visible damage to his roof is based solely on the report produced by Plaintiff's roofer.  In other words, Plaintiff's averment that the June 2014 Hailstorm caused extensive and visible damage to his roof depends on conclusions that, according the Complaint, Plaintiff's roofer neither reached nor conveyed to AFMIC.

that the June 2014 Hailstorm caused to Plaintiff's roof differed from Mr. Palace's prior assessment of the same.

Finally, Plaintiff's Opposition concedes a critical point concerning Plaintiff's "basis" for alleging that AFMIC intentionally designed its entire claims handling process to "avoid paying what it owes" to its insureds.  *Opposition*, at 3.  Specifically, Plaintiff acknowledges that the only "factual" allegations in his Complaint that supposedly support this accusation are those related to AFMIC's supposed mishandling of Plaintiff's own claim for contract benefits.  In other words, Plaintiff has accused AFMIC of widespread corporate bad faith based solely on his (vague and unsubstantiated) claim that AFMIC refused to pay benefits owed to him.  *Id.*

## ANALYSIS

### I.      Plaintiff's Allegations of Bad Faith Fail to Satisfy the Federal Pleading Requirements

As explained below, Plaintiff's vague, incomplete, and conclusory allegations fall far short of stating a plausible claim that AFMIC handled Plaintiff's specific claim for insurance benefits in bad faith.  However, it is highly problematic and concerning that Plaintiff goes much farther than merely accusing AFMIC of acting in bad faith towards him.  Rather, Plaintiff piles inference upon improper inference to accuse AFMIC of intentionally stacking the deck against all of its insureds by designing and using a claims handling process aimed at cheating them.  While Plaintiff apparently feels at liberty to flippantly assert such scandalous accusations against AFMIC on the basis of insinuation and improper speculation, AFMIC respectfully insists that such tactics should not (and cannot) be tolerated.  Rather, the federal pleading rules require much more than the meager offering Plaintiff has made to this Court.

**A.  First-party bad faith claims are subject to the heightened pleading requirements of Rule 9(b)**

   *1.  The South Dakota Supreme Court has instructed that third-party bad faith is a species of fraud*

Plaintiff does not dispute that the South Dakota Supreme Court has described bad faith "as a species of fraud" in the context of insurance disputes.  *See Kunkel v. United Sec. Ins. Co. of N.J.*, 168 N.W.2d 723, 732 (S.D. 1969).  Plaintiff instead attempts to evade the significance of this characterization of "bad faith" by accusing AFMIC of "deceptively omitt[ing]" a "see also" citation the *Kunkel* Court provided to an Illinois Court of Appeals case addressing the standard of proof applicable to bad faith claims. This accusation is ironic, given that Plaintiff himself has mischaracterized the *Kunkel* Court's explanation of the nature of a bad faith claim.

The plaintiff in *Kunkel* asserted a third-party bad faith claim against his insurer, alleging that the insurer had wrongfully refused to settle a lawsuit brought by a third-party against the plaintiff that the insurer defended on the plaintiff's behalf under the terms of his policy.  *Id.* at 725.  The plaintiff prevailed on his claim against his insurer, and the insurer subsequently challenged the verdict.

A key question the insurer presented in its appeal was what standard of proof the plaintiff was required to meet to prove his third-party bad faith claim.  *Id.* at 732.  The insurer argued that the plaintiff was required to establish bad faith by clear and convincing evidence.  *Id.*  In support of this position, the insurer relied on case law from other jurisdictions holding that because: (1) bad faith is a species of fraud; and (2) fraud must be proved by clear and convincing evidence; then (3) bad faith must also be proved by clear and convincing evidence.  *Id.*

Although the *Kunkel* Court acknowledged that third-party "bad faith is a species of fraud," *see also Jennings v. Jennings*, 309 N.W.2d 809 (S.D. 1981), the Supreme Court rejected

7

the insurer's argument that bad faith must be proven by clear and convincing evidence. Critically, however, the *Kunkel* Court did not reject the insurer's argument on the grounds that fraud and bad faith were materially different and were thus subject to different burdens of proof.

Rather, the Supreme Court noted that "*the burden to prove fraud* [was] a preponderance of the evidence," and therefore the insured should also be required to prove bad faith by a preponderance of the evidence. *Id.* (emphasis supplied). The *Kunkel* Court thus relied upon the standard of proof for fraud claims to decide the standard of proof for bad faith claims—presumably because "bad faith is a species of fraud."[3] Accordingly, it is clear that the *Kunkel* Court was not distinguishing third-party bad faith and fraud—*it was equating them*. *Id.*

### 2. First-party bad faith is also a species of fraud under South Dakota law

Given that *third-party bad faith* is a species of fraud, then *first-party bad faith* clearly must be as well. *Kunkel*, 168 N.W.2d at 732. Under South Dakota law, "third-party bad faith occurs when 'an insurer breaches its duty to give equal consideration to the interests of its insured when making a decision to settle a case' brought against its insured by a third party." *Bertelsen v. Allstate Ins. Co.*, 796 N.W.2d 685, 700 (S.D. 2011) (quoting *Kunkel*, 168 N.W.2d at 726). Moreover, the South Dakota Supreme Court has suggested that, at least in some circumstances, it may be permissible for the fact-finder to consider the "character and extent of the insurer's negligence" in deciding whether the insurer committed third-party bad faith. *Kunkel*, 168 N.W.2d at 726-27.

---

[3]   In support of this position, the *Kunkel* Court cited to cases from several other jurisdictions, including the *Cernocky* case decided by the Illinois Court of Appeals, holding that bad faith claims must be proved by a preponderance of the evidence. *Id.*; *see Cernocky v. Ind. Ins. Co. of N.A.*, 216 N.E.2d 198, 205 (Ill. App. Ct. 1966). The *Kunkel* Court did reference in passing that the *Cernocky* Court had distinguished bad faith and fraud, but in context it appears the South Dakota Supreme Court made this reference because Illinois law imposed a higher burden of proof for fraud than for bad faith. Plaintiff's veiled suggestion the *Kunkel* Court distinguished bad faith and fraud is based on a demonstrably incorrect reading of the case.

By contrast, "[f]irst party bad faith occurs [only where] an insurance company *consciously engages in wrongdoing* during its processing or paying of policy benefits to its insured." *Id.* To establish first-party bad faith, the insured must prove that the insurer had no reasonable basis to deny the insured's claim and knew (or recklessly disregarded) that there was no reasonable basis for the denial. *Dakota, Minn. & E. R.R. Corp. v. Acuity*, 771 N.W.2d 623, 629 (S.D. 2009). In other words, first-party bad faith necessarily includes conscious or reckless wrongdoing on the part of the insurer with respect to the manner in which it processed or paid policy benefits to an insured. *Id.* Thus, first-party bad is clearly *more akin* to fraud than is third-party bad faith. Given that third-party bad faith is a species of fraud, first-party bad faith clearly must be as well.

Plaintiff attempts to avoid this obvious conclusion by arguing that first-party bad faith cannot be a species of fraud because it is possible for an insurer to engage in first-party bad faith without committing fraud. *Opposition*, at 6-8. Plaintiff's argument runs contrary to the South Dakota Supreme Court's reasoning in *Kunkel*. Specifically, although an insurer clearly can engage in *third-party bad faith* without committing fraud, this did not stop the *Kunkel* Court from characterizing third-party bad faith as a species of fraud. *Kunkel*, 168 N.W.2d at 732. *Kunkel* thus establishes that first-party bad faith can and should be deemed a species of fraud as well, irrespective of whether the alleged bad faith specifically involved fraud.

### 3. Because Plaintiff's first-party bad faith claim is a species of fraud, this claim must satisfy the heightened pleading requirements of Rule 9(b)

As explained in AFMIC's Motion to Dismiss and Supporting Brief, courts sitting in jurisdictions that equate bad faith with fraud or that have addressed claims of bad faith which involved fraud-like conduct have consistently required that claims of bad faith be pled with particularity. *See, e.g., Jason's Port City Health Club, Inc. v. Hartford Fire Ins. Inc.*, No.

Civ.A.05-0206-WS-C, 2005 WL 1527692, at *2 (S.D.Ala. June 27, 2005) (noting that, under Alabama law, bad faith is a species fraud, and holding that bad faith claims arising under Alabama law are thus subject to the particularity requirements of Rule 9(b)); *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 737 F. Supp. 2d 137, 145 (S.D.N.Y. 2010); *Noble Fiber Tech., LLC v. Argentum Medical, LLC*, No. 305-CV-01855, 2006 WL 1783219, at *5-6 (M.D.Pa. June 27, 2006); *Kropf v. Vermillion Bd. of Educ.*, No. 46303, 1986 WL 8652, at *3 (Ohio Ct. App., Sixth Dist., Aug. 8, 1986).  The South Dakota Supreme Court's characterization of bad faith in *Kunkel* establishes that this Court should follow the path tread by these jurisdictions and hold that claims of bad faith are subject to the pleading requirements of Rule 9(b).

Plaintiff attempts to evade the proper application of Rule 9(b) by noting that a federal district court sitting in Connecticut has declined to apply the heightened pleading requirements to bad faith claims.  *See* Opposition, at 8-10 (citing *Ragusa Corp. v. Standard Fire Ins. Co.*, 2014 WL 1281314, at *5 (D.Conn. Mar. 27, 2014)).  This case is inapposite for the simple reason that Connecticut courts have not deemed bad faith to be a species of fraud.  Rather, the proper course this Court should follow has been blazed by jurisdictions that, like South Dakota, deem bad faith to be a species of fraud.[4]

---

[4]     Notably, Plaintiff appears to contend that the South Dakota Supreme Court's recent decision in *Mordhorst v. Dakota Truck Underwriters and Risk Admin Servs.*, No. 27771, 2016 WL 56336819 (S.D. Sept. 28, 2016), somehow undermines AFMIC's argument that first-party bad faith claims arising under South Dakota law should be subject to the heightened pleading requirements of Rule 9(b).  *Mordhurst*, however, did not address the nature of bad faith claims or whether they are subject to South Dakota's heightened pleading standards for fraud claims.  Instead, as explained more fully below, the *Mordhurst* Court merely concluded that the plaintiff's bad faith claim, which set forth a very detailed description of the specific unreasonable actions the insurer allegedly took while handling plaintiff's claim, adequately stated a cause of action under South Dakota law.  The *Mordhurst* Court was not asked to decide whether bad faith claims were subject to the heightened pleading standards for fraud, and, not surprisingly, the issue did not come up in the Court's ruling.  Nothing in the *Mordurst* decision or any other decision by the South Dakota Supreme Court precludes this Court from deciding, as a matter of first impression, that plaintiffs asserting first-party bad faith claims under South Dakota law must satisfy Rule 9(b)'s heightened pleading requirements.

### 4. Moreover, Plaintiff's bad faith claim must satisfy Rule 9(b) because it is supported by allegations that sound in fraud

Although, as explained above, the general nature of Plaintiff's first-party bad faith claim renders it subject to Rule 9(b)'s particularity requirement, Plaintiff's bad faith claim must satisfy Rule 9(b) for the additional and related reason that it is based on specific allegations which sound in fraud.  Specifically, Plaintiff states conclusory allegations that AFMIC twice misrepresented to Plaintiff the damage which the June 2014 Hailstorm caused to his roof and that these misrepresentations occurred pursuant to AFMIC's claims handling processes, which were purportedly designed to cheat AFMIC's insureds.  *Compl.* ¶¶ 13-14, 25-28; *see Opposition*, at 13-14.  Were Plaintiff to assert a fraud claim on the basis of these alleged misrepresentations, he surely would be required to satisfy the particularity requirement of Rule 9(b).  Plaintiff should not be able to sidestep Rule 9(b) by asserting such allegations pursuant to a first-party bad faith claim.  *See Kunkel*, 168 N.W.2d at 732 (noting that some jurisdictions impose heightened burdens of proof on plaintiffs who assert a bad faith claim involving fraud/fraud-like conduct).

Indeed, this is precisely the conclusion at which several federal courts have arrived under similar circumstances.  Specifically, numerous courts have held that a cause of action containing allegations which sound in fraud must satisfy the heightened pleading requirements of Rule 9(b), *even if fraud is not an essential element of the cause of action*.  *See, e.g., Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*, 781 F.3d 1003, 1011 (8th Cir. 2015) (holding that averments of fraud must be pled with particularity, even if fraud is not an essential element of the claim); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003) (holding that, with respect to causes of action that do not include fraud as an essential element, if the claim is "grounded in fraud or [sounds] in fraud, [then] the pleading of that claim as a whole must satisfy

11

the particularity requirement of Rule 9(b)); *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 283 F.3d 363, 368 (5th Cir. 2001) (Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim for fraud or not); *Shangcheng Dev. PPC v. Norvanta, LLC*, No. 4:14-cv-164, 2015 WL 1143143, at *2 (D.N.D. May 27, 2015) ("The United States Court of Appeals for the Eighth Circuit has held that claims grounded in fraud must meet the heightened pleading requirements under Rule 9(b)."). Thus, both binding and persuasive precedent instruct that, because Plaintiff's allegations of bad faith sound in fraud, this claim must satisfy the particularity requirement of Rule 9(b).[5]

### B.  Plaintiff has failed to satisfy the heightened pleading requirements of Rule 9(b)

Plaintiff's Complaint falls far short of satisfying the particularity requirement of Rule 9(b). Plaintiff protests this conclusion and argues that his Complaint provides specific information regarding the "when, where, what, who, and why" of AFMIC's alleged bad faith conduct. *Opposition*, at 12-13. Aside from being incorrect, this narrow argument also ignores the fact that the heightened pleading requirements serve a far broader purpose then merely ensuring that a defendant is provided sufficient notice of the factual basis for fraud allegations. Rather, Rule 9(b)'s particularity requirement additionally aims to protect defendants from

---

[5]     In a misguided effort to establish that no purpose would be served by applying the heightened pleading standards of Rule 9(b) to first-party bad faith claims, Plaintiff provides a lengthy discussion of an Alabama federal district court case analyzing this issue. *Austin v. Auto Owners Ins. Co.*, 2012 WL 3101693 (S.D.Ala. July 30, 2012). The *Austin* case is inapposite for two distinct reasons. First, unlike this case, the *Austin* plaintiff did not allege that the defendant-insurer made any false or misleading statements, and the Court thus expressed skepticism that the pleading requirements for fraud could reasonably be applied to the plaintiff's complaint. More importantly, however, the *Austin* Court also reasoned that applying the heightened pleading standards to bad faith claims was unnecessary because bad faith claims center on an insurer's conduct in handling a plaintiff's claim; thus, an insurer accused of acting in bad faith generally has full notice of the conduct of which it is being accused. *Id.* at *2-4. As discussed more fully below, the Eighth Circuit has recognized that Rule 9(b) serves far more robust purposes than merely ensuring a defendant has notice of the basis of fraud claims asserted against it. *See Olson v. Fairview Health Servs. of Minn.*, 831 F.3d 1063, 1073 (8th Cir. 2016) (holding that the heightened pleading rules of Rule 9(b) also protect defendants by "safeguarding the reputation of defendants, disposing early of unfounded fraud claims advanced only for their nuisance [or settlement] value, and preventing fishing expeditions [in discovery]"). The *Austin* Court's overly narrow framing of the purposes of the heightened pleading rules is irreconcilable with binding Eighth Circuit precedent. Accordingly, this Court should disregard *Austin*.

frivolous claims and to deter plaintiffs from filing weak and/or unfounded fraud (or fraud-like) claims for the purpose of attempting to increase the settlement value of case or broaden the scope of discovery.  Plaintiff's unsubstantiated accusations of widespread corporate bad faith provide a textbook example of the types of abuses against which Rule 9(b) guards.

1.  *Plaintiff's Complaint fails to provide specific allegations regarding why AFMIC's handling of his claim was unreasonable*

Plaintiff's own Opposition undermines Plaintiff's contention that his Complaint provides specific factual allegations identifying how and why AFMIC's handling of Plaintiff's claim constituted bad faith.  Plaintiff takes substantial pains to point out that the Complaint alleges that: (1) AFMIC performed two inspections of his roof, and (2) following both investigations, AFMIC represented to Plaintiff that he was entitled to between $4,000 and $5,500 in benefits based on the damage the June 2014 Hailstorm caused to his roof.  *Opposition*, at 12-14; *Compl.* ¶¶ 13-15, 24-28; *see AFMIC's Answer* ¶¶ 19, 28 (Dkt. 10).  Plaintiff then couples these basic allegations with a laundry list of conclusory statements suggesting AFMIC knew that the June 2014 Hailstorm totaled his roof and that it performed multiple sham investigations to avoid paying for the damage.

As discussed above, however, the Complaint alleges <u>*no specific facts*</u> regarding the type or extent of the damage the June 2014 Hailstorm actually caused or how Plaintiff "knows" that the June 2014 Hailstorm caused more damage to his roof than AFMIC represented in its July 2014 and August 2016 reports.  Rather, as currently constructed, the factual allegations in Plaintiff's Complaint state only that: (1) AFMIC paid benefits to Plaintiff for damage the June 2014 Hailstorm caused to his roof; and (2) for unidentified reasons, Plaintiff subjectively believes that AFMIC's benefits payments were too low.

As explained above, the remaining allegations in Plaintiff's Complaint consist of nothing more than unwarranted inferences, improper insinuations, and sweeping legal conclusions cast in the form of factual allegations that this Court can and should ignore.  _See_ _Ashcroft v. Iqbal_, 556 U.S. 662, 678 (2009); _E-Shops Corp. v. U.S. Bank Nat. Ass'n_, 678 F.3d 659, 663 (8th Cir. 2012); _accord_ _Mordhurst_, 2016 WL 5636819, at *1 ("[T]he court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences, and sweeping legal conclusions cast in the form of factual allegations.") (internal marks and quotation omitted).  Plaintiff's Complaint falls far short of alleging sufficient, specific factual allegations to support his bad faith claim.  Accordingly, Plaintiff's bad faith claim (and related request for punitive damages) should be dismissed.

However, even if Plaintiff alleged sufficient facts to support a valid accusation that AFMIC mishandled his claim for benefits (which he has not), and even if AFMIC owes Plaintiff 100% of the benefits which he has sought (which it does not), Plaintiff's Complaint still falls far short of alleging facts sufficient to support Plaintiff's conclusory legal allegation that AFMIC intentionally designed its corporate claims handling processes to cheat its insureds.  Plaintiff has essentially conceded that he has no knowledge of AFMIC's corporate claims handling policies, procedures and practices, nor does Plaintiff have any specific knowledge regarding how AFMIC has handled other insureds' claims.  Instead, Plaintiff's "allegations" of widespread corporate bad faith are premised solely on an absurd inference that, because AFMIC supposedly mishandled Plaintiff's claim, it must have designed its entire claims handling process to accomplish this outcome (with all of its insureds).  This scandalous insinuation is preposterous and improper under the narrow "facts" Plaintiff has alleged.  Accordingly even if the Court concludes that Plaintiff has alleged sufficient facts to support a claim that AFMIC handled his

14

specific claim in bad faith, Plaintiff's claim that AFMIC intentionally, and in bad faith, designed its claim handling process to cheat its insureds is unfounded and should be dismissed.

### 2.   Plaintiff ignores additional purposes served by Rule 9(b)

Plaintiff's Opposition incorrectly argues that, because AFMIC has some limited knowledge of what it is being accused of (having a corporate policy/practice of conducting sham investigations), Plaintiff has satisfied the "notice" purposes of Rule 9(b), and his bad faith claim should be allowed to proceed.  This argument misses the mark because it woefully marginalizes the robust purposes that the heightened pleading rules serve.

The Eighth Circuit recently observed that Rule 9(b) has far more important functions than merely ensuring that a defendant has basic notice of the basis of fraud claims asserted against it. Because allegations of fraud and fraud-like conduct suggest moral turpitude on the part of the defendant, the heightened pleading rules of Rule 9(b) also protect defendants by "safeguarding the reputation of defendants, disposing early of unfounded fraud claims advanced only for their nuisance [or settlement] value, and preventing fishing expeditions [in discovery]."  *Olson v. Fairview Health Servs. of Minn.*, 831 F.3d 1063, 1073 (8th Cir. 2016) (citing Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure § 1296* (3d ed. 2004)).

The Eighth Circuit is not alone in its view of the broad and important purposes that Rule 9(b) serves.  Rather, this view of the particularity requirement has been widely accepted and applied by the federal courts for decades.  *See* Miller & Cooper, *Federal Practice and Procedure* § 1296 (discussing the historical roots and application of Rule 9(b)'s particularity requirement). Thus, Plaintiff's attempt to re-cast Rule 9(b)'s heightened *pleading requirements* as merely imposing heightened *notice requirements* grossly undervalues the key role Rule 9(b) plays in

protecting defendants against unfounded claims involving allegations of fraud or fraud-like conduct. *Id.*

Plaintiff's bad faith claim in this case reeks of the very abuses against which Rule 9(b) guards. Plaintiff's bad faith claim, in substance, asserts that AFMIC lied to Plaintiff about the damage to his roof and did so pursuant to a broader (and unspecified) claims handling process designed to bilk its insureds. These conclusory allegations, particularly those related to AFMIC's purported corporate claims handling processes, constitute flagrant attacks on AFMIC's reputation. The federal pleading rules surely do not permit Plaintiff to raise these scandalous accusations based on nothing more than (vague and defectively pled) allegations that AFMIC mishandled Plaintiff's claim.

Moreover, based on AFMIC's experience in similar cases in South Dakota (i.e., cases involving allegations of bad faith premised on unfair claims handling practices), it is likely that Plaintiff will seek exceedingly broad and expensive corporate discovery from AFMIC on the grounds that he has alleged that AFMIC designed and utilized unfair claims handling processes. Plaintiff has pled no specific factual allegations regarding how AFMIC acted in bad faith towards him and has essentially conceded that he has no knowledge that AFMIC has used unfair claims handling process with other insureds, much less that AFMIC designed its claims handling process to accomplish this outcome. Allowing Plaintiff's defectively pled bad faith claim to remain in the case will expose AFMIC to grave risk that it will have to spend a significant amount of the Court's time dealing with unnecessary discovery disputes.

Rule 9(b)'s particularity requirement prevents plaintiffs from using baseless fraud or fraud-like claims to impose this undesirable consequence on defendants (and the judicial system) and thereby promotes the fundamental purpose of the Federal Rules of Civil Procedure—

securing "the just, speedy, and inexpensive determination of ever action and proceeding." Fed. R. Civ. P. 1. Allowing Plaintiff to proceed on a defectively-pled bad faith claim (that is grounded in conclusory allegations of fraud-like conduct) would violate both the letter and spirit of Rules 1 and 9(b). Accordingly, AFMIC respectfully requests that the Court dismiss Plaintiff's claim for bad faith and related request for punitive damages.

## II.   Even if Plaintiff's Bad Faith Claim is Subject Only to the Standard Notice Pleading Requirements, Plaintiff's Complaint Still Fails to Adequately State a Valid Claim for Bad Faith

As explained in AFMIC's Motion to Dismiss and Supporting Brief, Plaintiff's Complaint plainly fails to state a plausible, adequate claim for bad faith, regardless of whether this claim is subject to Rule 9(b)'s particularity requirement or merely the plausibility standard set forth in *Iqbal* and *Twombly.*

Despite Plaintiff's ineffective efforts to distinguish it, the case of *Plummer v. State Farm Fire and Cas. Co.*, No. 2:13-cv-01579, 2014 WL 2960473 (W.D.Pa. June 27, 2014) provides a textbook example of the manner in which courts should evaluate whether a plaintiff has fairly and adequately pled a first-party bad faith insurance claim under the general plausibility standards. Plaintiff's Opposition contends that "the only thing *Plummer* has in common with this case" is that it "also involved a hail claim," *Opposition*, at 22. This curious characterization of *Plummer* is demonstrably incorrect.

Like the case at hand, the plaintiffs in *Plummer* alleged that: (1) their roof was severely damaged by a violent storm; (2) they filed a claim with their insurer; (3) the insurer investigated the claim; (4) the plaintiffs provided "proof of damage" to their insurer; and (5) following the investigation/receipt of proof of damage, the insurer mischaracterized the damage to their roof and offered them an unreasonably low settlement. *Plummer*, 2014 WL 2960473, at *1, 5-6.

Relying on these narrow allegations, the *Plummer* plaintiffs further asserted a long list of conclusory statements (very similar to those provided in Plaintiff's Complaint) asserting, in substance, that the insurer had intentionally and maliciously denied payment of benefits to which it knew the plaintiffs were entitled. *Id.* at *6.

Applying the standard notice pleading rules set forth in *Iqbal* and *Twombly*, the *Plummer* Court concluded that the plaintiffs' complaint failed to state a viable cause of action for bad faith. *Id.* In reaching this conclusion, the *Plummer* Court observed that the plaintiffs' complaint provided sparse allegations of fact which stated nothing more than a standard breach of contract claim. *Id.* The *Plummer* Court correctly concluded, however, that the Plaintiff's bad faith claim was predicated on a "laundry list of conclusory statements" that failed to give rise to more than mere speculation" that the insurer had acted in bad faith. *Id.* Thus, although the plaintiffs' complaint had identified the "who," "when," and "where" of the alleged bad faith, the plaintiffs' failure to provide specific factual details regarding "how" and "why" the bad faith occurred doomed this claim under the *Iqbal/Twombly* plausibility standard. *Id.* at *6-7.

Plaintiff's allegation that AFMIC mishandled his insurance claim is a virtual copy of the *Plummer* plaintiffs' complaint. Specifically, Plaintiff alleges that: (1) his roof was damaged by a hailstorm that caused widespread and plainly visible damage [*Compl.* ¶ 7]; (2) he made a claim to AFMIC for the damage [*Compl.* ¶ 9]; (3) AFMIC inspected his roof and was provided proof of damage [*Compl.* ¶¶ 10, 21-23]; and (4) AFMIC supposedly mischaracterized the damage to Plaintiff's roof and offered him an unreasonably low settlement [*Compl.* ¶¶ 12-14, 25-28]. Plaintiff then relies on a laundry list of conclusory legal allegations in a transparent attempt to fill in the substance that is lacking in his factual allegations. *Compl.* ¶¶ 15-20, 29-49, 52-59.

Indeed, the only material difference between Plaintiff's allegations of bad faith and those asserted by the *Plummer* plaintiffs is that the *Plummer* plaintiffs limited their allegations of bad faith to the manner in which their insurer handled *their specific claim*.  Plaintiff, on the other hand, goes much further and accuses AFMIC of widespread institutional wrongdoing.  Plaintiff's allegations of bad faith thus certainly warrant far more scrutiny than the *Plummer* plaintiffs' bad faith claim received.[6]

As noted in AFMIC's Motion to Dismiss and supporting brief, numerous federal courts have cut off similar attempts by plaintiffs to use insinuations and conclusory allegations in lieu of actual, sufficient factual allegations of bad faith.  Moreover, these courts have often done so under the standard notice pleading rules.  *See AFMIC's Supporting Brief*, at 12-13.

Interestingly, although Plaintiff cites a single case suggesting that the bar set for a first-party insurance bad faith claim to satisfy the *Iqbal/Twombly* plausibility requirement is quite low, many federal courts have disagreed with this approach and have instead dismissed claims of bad faith which do not provide a detailed explanation of the unreasonable conduct in which the insurer engaged and why such conduct constituted bad faith.

Rather, *Plummer* and numerous other cases hold that the *Iqbal/Twombly* standard requires plaintiffs to set forth bad faith claims with a degree of particularity that rivals the Rule 9(b) heightened pleading standards.  <u>*See, e.g., Plummer*</u>, 2014 WL 2960473, at *1, 5-6; *Camp v.*

---

[6]     Plaintiff attempts to distinguish *Plummer* on the grounds that Pennsylvania's standard of proof for bad faith is higher than the standard of proof utilized by South Dakota.  AFMIC fails to understand the relevance of this argument, particularly since the *Plummer* court clearly analyzed the plaintiffs' complaint under the *Iqbal/Twombly* standards that Plaintiff alleges are applicable in this case.  The *Plummer* Court did not dismiss the plaintiffs' bad faith claim based on Pennsylvania's substantive burden of proof for bad faith.  Rather, the *Plummer* Court was clearly concerned that the plaintiffs had failed to provide specific details regarding how and why their insurer acted unreasonably in processing and paying their claim.  Merely asserting conclusory statements that the plaintiffs had provided their insurer with proof of that the plaintiffs' loss was greater than the insurer had represented did not cut it.  Rather, similar to the South Dakota Supreme Court's approach in the *Mordhurst* case discussed below, the *Plummer* Court clearly required a specific explanation of what investigation the insurer performed and why it was defective (beyond merely alleging that the insured refused to acknowledge the full loss).  The plaintiffs failed to provide such details, thereby rendering their bad faith claim defective as a matter of law.  This is the exact same deficiency that plagues Plaintiff's Complaint.

*N.J. Mfrs. Ins. Co.*, No. 16-16-0187, at *4-5 (E.D.Pa. June 8, 2016) (citing case law from several jurisdictions holding that claims of bad faith must be supported by detailed allegations specifying the unfair conduct in which the insurer engaged and why such conduct constituted bad faith); *Burton v. Companion Prop. and Cas. Ins. Co.*, No. W-14-CV-054, 2014 WL 12490005, at *3-5 (W.D.Tex. July 29, 2014). The obvious concern driving courts to apply these quasi-heightened pleading standards is that a plaintiff should not be able to lightly accuse insurers of engaging in bad faith. *Id.* Thus, merely putting the insurer on notice of the general wrongdoing of which it is being accused (i.e., intentionally low-balling the insured's claim) is not enough—rather, the insured must provide *details* which set forth more than a mere possibility that the insurer acted unlawfully. *Plummer*, 2014 WL 960473, at *5-6.

Plaintiff makes no competent effort to distinguish this well-established body of federal case law. Instead, Plaintiff attempts to analogize his case to the South Dakota Supreme Court's decision in *Mordhurst* in an effort to escape the pleading requirement set by the federal rules.[7] This effort is misguided. However, to the extent *Mordhurst* is relevant, this case is plainly distinguishable from *Mordhurst* in that the *Mordhurst* plaintiff's complaint supplied the very type of specific details that federal courts have required federal plaintiffs to supply.

Mordhurst sought workers' compensation benefits from the defendant-insurer after he allegedly was injured by a sofa that fell off the back of a delivery truck and struck him.

---

[7]     Plaintiff also relies upon the *Austin* decision to establish that his sparsely-pled bad faith claim suffers from no *Twombly/Iqbal* infirmity. *See Opposition*, at 23 n.15. Once again, Plaintiff's reliance on *Austin* is misplaced for two reasons. First, the *Austin* Court clearly was only concerned that the plaintiff's allegations put the defendant on notice of the general nature of the conduct of which it was being accused. Thus, unlike *Plummer* and the other cases cited in AFMIC's Supporting Brief, the *Austin* Court permitted the Plaintiff to support her bad faith claim on general (and conclusory) allegations that the insurer had refused to pay the plaintiff's claim even though the insurer knew that the claim was not fairly debatable. *Plummer* and numerous other federal courts have refused to permit insureds to accuse their insurers of bad faith on such a conclusory basis. *See AFMIC's Supporting Brief*, at 10-13 (citing cases). Second, and more importantly, the *Austin* plaintiff's bad faith claim was premised solely on allegations that her insurer handled her specific claim in bad faith. Plaintiff goes much further in alleging that AFMIC designed its entire claims handling practice to commit corporate bad faith on all of its insureds. This extraordinarily broad theory of bad faith is far more serious than the one alleged by the *Austin* plaintiff and deserves much more scrutiny.

20

*Mordhurst*, 2016 WL 563819, at *1.  Mordhurst's complaint alleged that he subsequently sought medical treatment, was seen by two physicians and multiple physical therapists who documented his resulting injuries (including specific physical indictors that Plaintiff was in severe pain), and that an MRI was conducted which revealed that Mordhurst had a herniated disk in his back.  *Id.*

Nearly one year later, at his insurer's request, Mordhurst met with an independent medical examiner hired by the insurer.  The examiner concluded that Mordhurst had merely suffered a strain in his back that was resolved shortly after the accident and specifically stated that Mordhurst's complaints of physical pain were not supported by objective findings (even though Mordhurst had provided detailed medical records to the insurer substantiating his injury).  Mordhurst's insurer subsequently terminated his workers' compensation benefits.  Mordhurst requested an appeal before the South Dakota Department of Labor seeking restoration of his benefits.  As part of this proceeding, Mordhurst's counsel deposed the examiner.  During the deposition, the examiner *expressly abandoned* his prior position that the work injury only caused a short-term injury.  *Id.* at *1-3.

Following a hearing, the Department concluded (based on the objective evidence noted above) that Mordhurst was entitled to benefits.  The insurer did not appeal this decision.  After obtaining this decision from the Department, Mordhurst filed a bad faith claim against his insurer.  *Id.*  Critically, Mordhurst's complaint spelled out, in substantial detail, the examinations performed by, and the specific differences in the conclusions of, his medical providers, on the one hand, and the insurer's examiner, on the other.  *Id.*

Mordhurst's insurer subsequently sought dismissal of the bad faith action for failure to state a claim.  *Id.* at *1.  The circuit court granted the motion based on a finding that, because Mordhurst's complaint acknowledged that his insurer relied on the examiner's findings to deny

21

Mordhurt's claim, the complaint established per se that the insurer had a reasonable basis to deny the claim.  *Id.* at *2.

On appeal, the South Dakota Supreme Court reversed the circuit court's dismissal of the bad faith claim.  Three relevant factors drove the Supreme Court's analysis.  First, the Supreme Court noted the detailed explanation in the complaint of the specific findings of Mordhurst's medical providers, on the one hand, and the insurer's examiner, on the other hand.  *Id.* at *1-3. The Supreme Court further observed that these experts reached starkly different conclusions related to the cause, nature and extent of Mordhurst's injuries.  *Id.* at *2-3.  Finally, the Supreme Court placed substantial emphasis on Mordhurst's allegations that the examiner abandoned his conclusions during his deposition and that the insurer never bothered to follow up with the examiner regarding whether his conclusions were supportable and/or consistent with the detailed medical records the insurer and the examiner had received.  *Id.* at *3.  The Supreme Court concluded that, assuming these allegations were true, a reasonable jury could reject the examiner's initial findings concerning Mordhurst's injuries (in favor of the specifically delineated findings of Mordhurst's medical providers) and could conclude that it was unreasonable for the insurer to rely on the examiner's findings.  *Id.* at *3.  As such, the Supreme Court determined that the circuit court had prematurely dismissed the bad faith claim.[8]

As discussed at length above, unlike the facts at issue in *Mordhurst*, Plaintiff's Complaint comes nowhere close to providing detailed factual allegations upon which a plausible finding could be reached that AFMIC acted in bad faith.  Specifically, Plaintiff provides no specific details about AFMIC's findings related to the damage the June 2014 Hailstorm caused to his

---

[8]     Notably, even though Mordhurst alleged that the examiner's evaluation of his medical records was biased, Mordhurst did not go so far as to allege that his insurer had intentionally structured the independent medical exam review process to achieve these results.  Again, Plaintiff's flagrant and unsubstantiated accusations of corporate misconduct by AFMIC warrant heightened scrutiny by this Court.

roof, what information AFMIC considered in reaching this conclusion, or why AFMIC's assessment of this information was incorrect.  Nor does Plaintiff provide any similar information related to his own roofer's inspection.

Rather, like the plaintiffs in *Plummer*, Plaintiff relies on conclusory allegations that the June 2014 Hailstorm severely damaged his roof, that AFMIC was provided (unspecified) information related to the same, and AFMIC supposedly misrepresented the extent of the (unspecified) damage for the purpose of low-balling him.  These abrupt and conclusory allegations fall far short of stating a valid claim for bad faith, regardless of whether this Court applies the heightened pleading standard of Rule 9(b) or the plausibility standard set forth in *Iqbal* and *Twombly*.[9]  Accordingly, AFMIC respectfully requests that this Court dismiss plaintiff's bad faith claim with prejudice.[10]

### III.   Plaintiff's Request for Punitive Damages Should Be Dismissed

Plaintiff's Opposition makes little effort to rebut AFMIC's challenges to Plaintiff's request for punitive damages and instead primarily argues that, because Plaintiff supposedly asserted a valid bad faith claim, the punitive damages claim is valid as well.  Moreover, Plaintiff acknowledges that his request for punitive damages is based on the (highly tenuous) theory that, because AFMIC allegedly mishandled his claim, this establishes that AFMIC's  entire "claims

---

[9]     Plaintiff asks this Court to take judicial notice of a separate complaint filed against AFMIC (by Mr. Haney's counsel) in the case *Neugebauer v. Am Fam. Mut. Ins. Co.*, 4:15-cv-04189-KES.  It is unclear what benefit Plaintiff expects to gain from the Court's consideration of the *Neugebauer* complaint, particularly since that complaint is fraught with the exact same pleading deficiencies that plague Plaintiff's Complaint in this case. AFMIC would further note, however, that the *Neugebauer* complaint and Plaintiff's Complaint are virtual carbon copies of one another, which strongly bolsters AFMIC's argument that Plaintiff has provided only boilerplate, conclusory allegations of bad faith, as opposed to valid factual allegations, as required by the federal pleading rules.

[10]     Plaintiff's Opposition inexplicably devotes over ten pages of text to arguing that South Dakota recognizes a common law action for first-party bad faith.  *Opposition*, at 14-26.  AFMIC did not claim otherwise in its Motion to Dismiss.  AFMIC requests that the Court disregard Plaintiff's efforts to prematurely argue the substantive merits of his bad faith claim.  The sole issues before this Court are: (1) what is the federal pleading standard that Plaintiff's first-party bad faith claim and related request for punitive damages are required to meet; and (2) has Plaintiff satisfied that standard?

23

handling process is [intentionally] *designed* to deny and delay paying the full amount of benefits it owes" to insureds. *Opposition*, at 30.

This insinuation is absurd and is wholly unsupported by the narrow allegations in Plaintiff's Complaint. As explained above, Plaintiff's Complaint contains gaping holes which preclude a plausible conclusion that AFMIC handled his claim in bad faith, much less that AFMIC intentionally designed its claims handling process to accomplish this result. For example, the Complaint utterly fails to explain or describe:

- What basis Plaintiff has for alleging that the June 2014 Hailstorm actually caused widespread and plainly visible damage to his roof.

- Any details concerning Mr. Palace's investigation of Plaintiff's roof and/or the factors Mr. Palace considered in reaching his conclusions regarding the damage the June 2014 Hailstorm caused to Plaintiff's roof.

- Why Plaintiff waited two years to challenge Mr. Palace's initial assessment of the damage to his roof and whether Plaintiff actually experienced any functional issues with his (allegedly) non-functional roof.

- Any details concerning the investigation Plaintiff's roofer performed on Plaintiff roof or what conclusions Plaintiff's roofer reached regarding how much of the weather-related damage to Plaintiff's (twenty year old) roof was caused by the June 2014 Hailstorm.

-  Any details concerning the August 2016 inspection of Plaintiff's roof, including whether the investigation concluded that all of the weather-related damage to Plaintiff's roof was caused by the June 2014 Hailstorm or whether the conclusions of the July 2016 and August 2016 investigations actually differed in any material respect.

- Any explanation of what policies and procedures AFMIC uses for investigating claims for hail damage or how these policies and procedures were developed.

As explained above, Plaintiff has sought to fill these factual gaps through the only means available to him—conclusory assertions that AFMIC intentionally performed sham investigations of Plaintiff's roof to avoid paying the contract benefits it owed to him. The sparse facts that Plaintiff alleges to support this scandalous accusation simply do not add up even to a plausible conclusion that AFMIC handled Plaintiff's claim in bad faith, much less that AFMIC

intentionally designed its claims handling process to cheat its insureds.  Simply put, neither of Plaintiff's bad faith theories pass muster.  It is thus inescapable that Plaintiff's Complaint falls far short of supporting Plaintiff's conclusory accusation that AFMIC's conduct towards him was oppressive, fraudulent or malicious in nature.

Rather, the sparse allegations in Plaintiff's Complaint reveal his bad faith claim and request for punitive damages for what they are—boilerplate accusations designed to augment the value of a standard breach of contract dispute and (presumably) to open the door to unnecessary discovery.  Plaintiff's baseless assertion of these accusations is improper under the federal pleading rules.  Accordingly, both of Plaintiff's theories of bad faith claim (bad faith handling of Plaintiff's specific claim and widespread utilization of bad faith claims handling practices) and Plaintiff's request for punitive damages should be dismissed.

**CONCLUSION**

For the reasons stated above, AFMIC respectfully requests that the Court dismiss Plaintiff's claim for bad faith (Count II) and request for punitive damages (Count III) with prejudice, and award such other relief as the Court deems just and proper under the circumstances.

DATED: October 31st, 2016                    MEYERS BILLION, LLP

                                             */s/  Steve Morgans*
                                             Steve J. Morgans
                                             Shriver Square
                                             230 S. Phillips Avenue, Suite 300
                                             PO Box 1085
                                             Sioux Falls, SD 57101-1085
                                             T: (605) 336-3700
                                             F: (605) 336-3786
                                             smorgans@meyersbillion.com
                                             Attorney for Defendant American
                                             Family Mutual Insurance Company


                                             FAEGRE BAKER DANIELS, LLP
                                             Ross Johnson
                                             801 Grand Avenue, 33rd Floor
                                             Des Moines, IA 50309
                                             T: (515)447-4705
                                             ross.johnson@faegrebd.com
                                             Attorney for Defendant American
                                             Family Mutual Insurance Company


### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was filed electronically through the Clerk of Court through ECF and that ECF will send a notice of electronic filing to the following:

Derek A. Nelsen                              Eric T. Preheim
dnelsen@fullerandwilliamson.com              epreheim@fullerandwilliamson.com

on this 31st day of October, 2016


                                             */s/  Steve Morgans*